SANTIAGO J. HERNANDEZ AND MARIA C. HERNANDEZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hernandez v. Commissioner
Docket No. 12415-79.
United States Tax Court
T.C. Memo 1982-327; 1982 Tax Ct. Memo LEXIS 419; 44 T.C.M. (CCH) 96; T.C.M. (RIA) 82327; June 10, 1982. *419 Held, a $17,000 check drawn on a Swiss bank and deposited in petitioner's account was not additional income to petitioners in 1975. Held,further, petitioner adequately substantiated the business purpose of trips taken to Equador and New Haven in 1975 and the expenses incident thereto are deductible. Held,further, petitioners are not liable for an addition to tax for negligence under sec. 6653(a), I.R.C. 1954, for 1975. Luis Medina, for the petitioners. David M. Kirsch, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in, and an addition to, petitioners' 1975 Federal income tax in the amounts of $8,514 and $426, respectively. After concessions by respondent, the issues remaining for decision are (1) whether a bank deposit in the amount of $17,000 constituted unreported taxable income; (2) whether petitioners have substantiated travel and entertainment expenses in the amount of $1,517; (3) whether the gross income from petitioner's business was underreported in the amount of $6,000 and if so whether it resulted in an increase in taxable income by a like amount; and (4) whether petitioners are liable for an *420 addition to tax under section 6653(a)[1] for negligent or intentional disregard of the rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner Santiago J. Hernandez and Maria G. Hernandez, husband and wife, resided in Miami, Fla., at the time of filing the petition herein. Petitioners filed their Federal income tax return for the taxable year 1975 with the Internal Revenue Service Center, Chamblee, Ga. Petitioner Maria C. Hernandez is a party herein solely by reason of having filed a joint return with Santiago J. Hernandez (hereinafter petitioner). Petitioner moved to the United States on October 10, 1961. Prior to that time he and his family resided in Havana, Cuba, [2] where he owned his own business. This business consisted of the manufacture and sale of office equipment and furniture. Petitioner *421 liquidated his business in 1960 following the communist takeover in Cuba. Petitioner stated that he decided to sell all of his equipment, get out of his business, and move to the United States because it was the new government's policy "to destroy private enterprises." After liquidating his business, petitioner had approximately 100,000 Cuban pesos which he kept in various Cuban banks. Most of this money was left behind in Cuba after petitioner left in 1961. Aproximately 75,000 pesos were left with his father-in-law, Jorge Dierksmeier (hereinafter Jorge), 25,000 were left with his parents, and a small amount was left with his wife, who immigrated to the United States about 8 months after petitioner. Although petitioner hoped that much of the money would eventually be brought out of Cuba with the family members he had left it with, the money was left in Cuba primarily to provide for their needs while they remained there. Beginning immediately after petitioner left Cuba, Jorge began to send the Cuban money left in his custody out of Cuba. The money was first converted into United States dollars [3] by purchasing such dollars on the black market in Cuba. [4] Jorge would give the dollars *422 to certain foreign diplomats with whom he was put in contact, who would then send a check in dollars to Edmund Ruch (hereinafter Ruch), a trusted friend in Switzerland. The dollars were then deposited into a Swiss bank account. Jorge was unaware of the actual amounts of money which made it safely to Switzerland. Some of the money never arrived in Switzerland because the persons to whom Jorge gave it did not send it on to Ruch but kept it for themselves. This was a risk which both Jorge and petitioner were aware of but which both were willing to accept. Jorge did not keep a record of how much money had been sent to Ruch since such transactions were illegal and he did not want there to be a record of these dealings. Shortly after leaving Cuba, petitioner periodically received small amounts of these expatriated funds by check or cash from Ruch and Gunther. Because *423 of the illegality of the transactions involved, only small amounts of money were exchanged and taken out of Cuba at a time, usually not exceeding $500. The largest portion of these funds were taken out of Cuba in 1972. In 1975, Jorge and his family moved from Cuba to Madrid, Spain. Jorge had remained in Cuba until that time because his son had previously been imprisoned for being an "imperialist" and was not released until then. After arriving in Spain, Jorge informed petitioner that he had a "surprise" for him and that petitioner would soon receive news from Ruch. Approximately 1 month later petitioner received a cashier's check for $17,000 from the Swiss Bank Corp.'s New York branch. Petitioner deposited this amount into a new account at the Merchant's Bank of Miami. Petitioner did not include the $17,000 in income for the taxable year 1975. In his notice of deficiency, respondent determined that this and other amounts based on source and application of funds was unreported taxable income, and increased petitioner's taxable income accordingly. [5] *424 In 1972, petitioner began his own business in Miami, Fla. This business consisted of the sale of store fixtures and refrigeration equipment for supermarkets and the design of supermarkets. Petitioner had both domestic and foreign customers. In each of his international transactions, petitioner required that the foreign customer open a letter of credit with an American bank before he would agree to send the merchandise requested. In this way petitioner was assured of being paid for the mechandise he shipped. In 1975, petitioner traveled to Equador in an effort to generate business there. One of the local governmental agencies placed an order with petitioner, but that sale was never consummated because the agency was unable to send petitioner a letter of credit. Petitioner incurred expenses in the amount of $1,009.73 while on this trip. These expenses included, among others, the cost of his roundtrip air fare, meals, and lodging. Sometime after his return from Equador petitioner prepared a summary sheet indicating the amount of his expenditures and the purpose of the trip, as indicated above. While in Equador, *425 petitioner met with certain people who expressed an interest in buying rubber tires for heavy equipment, trucks, and automobiles. Approximately 1 month after returning from Equador, petitioner made a trip to the Angstram Rubber Co. in New Haven, Conn., to investigate the purchase of such tires. Petitioner incurred expenses for this trip totaling $254.06, including, among others, the cost of his roundtrip air fair, meals, and lodging. Sometime after his return from this trip, petitioner prepared a summary sheet indicating the amount of his expenditures and the purpose for making such trip, as indicated above. Petitioner deducted the expenses incurred for the travel, meals, lodging expenses indicated above on his Schedule C for the taxable year in issue. Respondent disallowed these deductions in their entirety. [6]
On his Schedule C filed for the taxable year in issue, petitioner reported the following income and expense amounts in determining a net loss from his business of $1,703: Gross receipts
$21,700 Cost of goods sold
-18,681 Gross profit [7]
3,019 Business expense deductions
[8] -4,722
(including depreciation)
Net loss
($1,703)
*426 Petitioner's return for the taxable year 1975 had been prepared by his brother, Albert L. Hernandez (hereinafter Albert), who was an accountant. During the Internal Revenue Service audit of this return, Albert discovered that the worksheets he had prepared when completing the return had been lost and he therefore prepared that information again. While reviewing petitioner's 1975 tax situation, Albert discovered that an invoice in the amount of $4,738 for the purchase of supplies in 1974 had mistakenly been included in the cost of goods sold figure for 1975. He also discovered that the gross receipts figure for such year had been underreported by $2,174. At that time, Albert contacted the auditing agent to inform him of these discrepancies and conceded that an adjustment had to be made. In his notice of deficiency, respondent disallowed $6,000 of the claimed cost of goods sold. OPINION The first issue is whether the $17,000 bank deposit constituted unreported taxable *427 income. Petitioner maintains that the $17,000 is nontaxable because it constituted income which had been earned prior to the taxable year in issue while he resided in Cuba. Respondent maintains that the burden of proof on this issue is on petitioner and that he has failed to meet that burden. It is his contention that petitioner's explanation as to the source of the funds in issue is neither believable norcredible and should therefore be disregarded. Alternatively, respondent claims if we accept petitioner's explanation as to the source of the funds, the evidence presented was insufficient to establish how much, if any, of the funds transferred out of Cuba constituted the disputed funds herein. The determination of taxable income by respondent is presumptively correct and the burden is on petitioner to prove that this determination is wrong. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [9] *428 This burden may be met by showing that the funds were obtained from a nontaxable source. See Burgo v. Commissioner,69 T.C. 729, 743 (1978). [10] We find that petitioner has met his burden of proof. Both petitioner and Jorge testified in some detail as to why, how, and where the funds in issue were transferred out of Cuba. We have found both of them to be convincing witnesses and, in short, believe their testimony. Jorge specifically stated that he personally arranged to have the Cuban pesos exchanged for American dollars on the black market and to have those dollars sent to a trusted friend, Ruch, in Switzerland. Petitioner began to periodically receive small amounts of money, by check, from Ruch and Gunther shortly after leaving Cuba. Also, we note that the $17,000 was stipulated to have been received in the form of a cashier's check from the Swiss Bank Corp.
True, no evidence was presented as to certain details of the transfer of these funds, such as the exact amount received by Ruch, the identity of the foreign officials, other than Gunther, who transferred the money to Switzerland, and whether the $17,000 in issue was brought out of Cuba by Jorge in 1975 or was transferred out prior to that time. Of course, in view of the secrecy that was required in making these illegal transfers, lack of knowledge of certain *429 of these details is hardly surprising. However, irrespective of these and other unknown facts, we find that the evidence presented established that the $17,000 bank deposit constituted income which had been earned in years prior to the taxable year in issue, and therefore hold for petitioner on this issue. The next issue is whether pursuant to section 274(d) petitioner has properly substantiated the travel and entertainment expenses incurred on trips made to Equador and to New Haven, Conn. [10] Because respondent has conceded that the amount, dates, and places of these expenditures were properly substantiated, we need only determine whether the business purpose of such expenditures has been substantiated. Petitioner maintains that the trips made to Equador and to New Haven, Conn., respectively, were solely for business reasons. Specifically, he claims that the trip to Equador was to generate new international business, and that the trip to New Haven was to investigate the purchase and sale of rubber tires to people he had contacted in Equador. *430 Respondent claims that petitioner has failed to meet the substantiation requirements of section 274(d) as to the business purpose of the trips herein. Therefore, he claims that the expenses incurred in making such trips are not deductible. Section 274(d) and the regulations thereunder provide that no deduction is allowable to a taxpayer for travel and entertainment expenses unless such expenses are substantiated by "adequate records or by sufficient evidence corroborating his own statement." Expenses incurred for traveling, including meals and lodging, must be substantiated by, interalia, the business purpose of the travel. Sec. 1.274-5(b)(2)(iii), Income Tax Regs.
Pursuant to section 1.274-5(c)(2)(i) to meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, statement of expense or similar record, and documentary evidence which, in combination, are sufficient to establish each element of the expenditure." Subparagraph (ii)(b) provides that in order to constitute an adequate record of business purpose, a written statement of business purpose is generally required but the degree of substantiation required may vary with the facts and *431 circumstances. Pursuant to section 1.274-5(c)(3)(i) and (ii), Income Tax Regs., the business purpose may be substantiated by petitioner's own oral statement containing specific information in detail as to such purpose together with, inter alia, other corroborative evidence sufficient to establish this purpose, including circumstantial evidence. In the instant case, we find that petitioner has substantiated the business purpose of the travel expenses in question pursuant to this regulation. Here, petitioner stated that the trip to Equador was to meet with persons whom he had been put in contact in an effort to generate new business.He stated that he had entered into negotiations for the sale of his merchandise with a local government agency, but because the agency could not provide him with a letter of credit, the sale was not consummated. With regard to his trip to New Haven, Conn., petitioner stated that his purpose was to visit the Angstram Rubber Co. to investigate the purchase of rubber tires for resale. He testified that while he was in Equador he met a number of people who were interested in acquiring rubber tires and he was hopeful of supplying their needs. In view of the *432 testimony given and other evidence, we find that petitioner's "own statement" provides sufficient detail as to the business purpose of these trips to satisfy the requirements of section 1.274-5(c)(3)(i), Income Tax Regs. Moreover, we find that the business purpose of these trips has been adequately corroborated by circumstantial and other evidence. Petitioner's business included sales to foreign customers in foreign countries. He testified in some detail of his business practice when selling to customers in foreign countries, and specifically, of his practice of requiring that the customer establish a letter of credit with an American bank before shipment would be made. Petitioner's trip to the Angstram Rubber Co. in New Haven was to investigate the purchase and resale of rubber tires to persons he had met in Equador a little more than a month prior to this trip. Further, with respect to both of the trips in question, petitioner prepared a summary sheet which indicated the amount of the expenditures incurred on each trip, which we note is not questioned herein by respondent, and the business purpose for making such trips. In view of the foregoing, and the record as a whole, we find *433 that petitioner has satisfied the substantiation requirements of section 274(d), and the regulations thereunder, and therefore hold for petitioner on this issue. The next issue is whether petitioner underreported the gross income from his business on his Schedule C filed for the taxable year 1975 by $6,000, and if so, whether it resulted in an increase in taxable income by a like amount. At the outset, we note that both of the parties have implicitly agreed that the gross income from petitioner's business, see sec. 1.63-1(b), Income Tax Regs., was underreported by at least $6,000. Petitioner conceded at trial and on brief that the cost of goods sold was overreported by $4,738, and at trial he admitted that the gross receipts were underreported by $2,174. Thus, he has in essence conceded that the gross income was underreported by $6,912. [11] Respondent has claimed both at trial and on brief that the gross income was underreported by $6,000 because of either an overreporting of cost of goods sold or a combination of such overreporting plus an understatement of gross receipts. Because of the evidence presented, we find that the gross income from petitioner's business *434 was underreported by $6,912. However, this does not result, as respondent contends, in a concomitant increase in taxable income. Petitioner had deductions for business expenses and depreciation in the amount of $4,722, [12] which, subtracted from the gross income as originally reported, resulted in a net loss of $1,703. See p.8, supra. Therefore, increasing the gross income by $6,912 results in a net profit (rather than a loss) of $5,209. [13] Petitioner's taxable income is increased accordingly. The last issue is whether petitioner negligently or intentionally disregarded the rules and regulations. Petitioner claims that he did not negligently or intentionally disregard any of the rules and regulations. Respondent claims on brief that petitioners were negligent or intentionally disregarded the rules and regulations in omitting the $17,000 bank deposit from their income, and in failing to keep adequate records to substantiate their expenses in accordance with section 274(d). [14] *435 Since we have concluded above that the $17,000 bank deposit was not additional income in 1975 and that petitioner did keep records adequate to substantiate not only his expenses but also the business purpose of his trips to Ecuador and New Haven, which are the only expenses not conceded by respondent, we find that petitioners have carried their burden of proving error in respondent's determination of this addition to tax. We hold for petitioners on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year 1975.↩
2. Petitioner apparently resided temporarily in San Juan, Puerto Rico, during 1961, just prior to arriving in the United States.↩
3. The rate of exchange varied between 2 pesos to the dollar to 4 pesos to the dollar. ↩
4. Jorge and Gunther Merten (hereinafter Gunther) were the only persons who engaged in the black market transactions. Gunther was a German national who could travel in and out of Cuba freely and often took the money out of Cuba for Jorge.↩
5. Respondent conducted only an "office audit" of petitioners' return for 1975 and did not discuss his source and application of funds computation with petitioners before issuing his notice of deficiency.
6. Certain other travel and entertainment expenses deducted by petitioner and disallowed by respondent were conceded by respondent on brief and are not in issue herein.↩
7. This represents the gross income from petitioner's business for the taxable year in issue. See sec. 1.61-3, Income Tax Regs.↩
8. This figure included the $1,517 of travel and entertainment expenses claimed by petitioner.↩
9. All references to "rules" shall refer to the Tax Court Rules of Practice and Procedure. Respondent has not asserted that these expenses are not otherwise deductible under sec. 162 as ordinary and necessary business expenses.
[10] See also Troncelliti v. Commissioner,T.C.Memo. 1971-72↩.
11. $4,738 + $2,174.↩
12. This amount includes the $1,517 deduction claimed for travel and entertainment expenses, which we have held was properly deducted. ↩
13. $6,912 - $1,703.↩
14. Respondent does not base his negligence claim on petitioner's overstatement of cost of goods sold or understatement of gross receipts which petitioners concede for 1975.